UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MAELLEN LANGLOIS                                                    CIVIL ACTION

VERSUS

                                                                    15-835-SDD-RLB

AMEDISYS, INC.[1]

**RULING**

Before the Court is Defendant Amedisys Holding, LLC's *Motion to Compel Arbitration and Dismiss, Alternatively to Stay Action Pending Arbitration*.[2]  Plaintiff, Maellen Langlois, has filed an *Opposition*[3] to which Amedisys has filed a *Reply*.[4]  For the following reasons, the Court grants Amedisys' *Motion*.

**I.    FACTUAL BACKGROUND**

Plaintiff, Maellen Langlois ("Langlois"), filed this employment discrimination suit against her former employer, Amedisys Holding, LLC ("Amedisys"), claiming that, after 4 1/2 years of working for Amedisys, she was unlawfully terminated in July of 2015.[5]  She has asserted claims arising under the Age Discrimination in Employment Act ("ADEA"); the Americans with Disabilities Act ("ADA"); Louisiana's Employment Discrimination Law ("LEDL"); the Family and Medical Leave Act ("FMLA"); and under Louisiana's common law of tort and breach of contract.  In response to her lawsuit, Amedisys filed a motion

---

[1] In her *Opposition*, Langlois explained that she misspelled Defendant's name in the caption and sought to correct her error.  (In her *Complaint* she erroneously spelled Defendant's name as "Amedisy's, Inc.").  Rec. Doc. 8, n. 1.
[2] Rec. Doc. 4.
[3] Rec. Doc. 8.
[4] Rec. Doc. 13.
[5] Rec. Doc. 1.

33305                                                                1

requesting the Court to compel arbitration and dismiss Langlois' claims. In the alternative, Amedisys requests a stay pending arbitration.

The Parties do not dispute the fact that, on August 6, 2013, Amedisys emailed all employees, including Langlois, about Amedisys' new Arbitration Program.[6] The email message informed all recipients that it contained "time-sensitive materials" and instructed all employees to review them because these materials could affect their legal rights.[7] All email recipients were instructed to "click" the email to open the materials.[8] Upon clicking on the email, the recipient received a pop-up Acknowledgement Form that stated:

THE AMEDISYS ARBITRATION PROGRAM

**ACKNOWLEDGEMENT FORM**

By clicking "Acknowledge" below, you will be given access to the Amedisys Arbitration Program materials, which include a Cover Letter, the Dispute Resolution Agreement, and FAQs. You are required to review these materials. Please read the materials carefully. **Unless you opt out of the Dispute Resolution Agreement within 30 days of today's date, you will be bound by it, which will affect your legal rights.**

By clicking the "Acknowledge" button on this screen I acknowledge and understand that I will be given access to the materials described in the above paragraph and that I am required to review these materials.[9]

After clicking the Acknowledge button, an employee was directed to a webpage that included access to Amedisys' Arbitration Program materials,[10] including the Arbitration Agreement and a Dispute Resolution Agreement Opt-Out Form.[11] Notably, as part of the

---

[6] Rec. Doc. 4-2; Rec. Doc. 4-4, pp. 3-4, ¶4 (Affidavit of T. Terrell West, Director of HR Governance, Diversity, and Compliance for Amedisys).
[7] Rec. Doc. 4-4, p. 4, ¶4.
[8] Rec. Doc. 4-2.
[9] Rec. Doc. 4-3 (emphasis original).
[10] Rec. Doc. 4-4, p. 4, ¶6.
[11] Rec. Doc. 4-6, pp. 2-8 ("Amedisys, Inc. Dispute Resolution Agreement"); Rec. Doc. 4-6, p. 9 ("Dispute Resolution Agreement Opt-Out Form"). Also included was the "Cover Letter to the Amedisys Arbitration Program and Dispute Resolution Agreement" (Rec. Doc. 4-7) and "Amedisys Arbitration Program—Frequently Asked Questions" (Rec. Doc. 4-8). Rec. Doc. 4-4, p. 4, ¶6.

August 2013 email distribution, Amedisys employees were given the option to "opt out" of the "[Dispute Resolution Agreement] by printing, signing and forwarding an Opt-Out Form by U.S. Mail to Amedisys, Inc., postmarked no later than 30 days from the date he/she acknowledge[d] receipt of the Dispute Resolution Agreement."[12]

The Arbitration Agreement requires mutual arbitration for the resolution of "all legal disputes between [employees] and Amedisys before an arbitrator, rather than in court."[13] The Arbitration Agreement expressly provides that it is governed by the Federal Arbitration Act (FAA) and applies to "any dispute arising out of or related to Employee's employment with Amedisys or termination of employment regardless of its date of accrual and survives after the employment relationship terminates."[14]  The Agreement further states that, after the Arbitrator issues his/her decision, "[a] court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration."[15]

It is undisputed that Langlois acknowledged receipt of the email on August 6, 2013.[16]  It is also undisputed that she never opted out of the Arbitration Agreement.[17] Considering the express terms of the Arbitration Agreement, Amedisys asserts that Langlois' claims are preempted by the FAA and subject to mandatory arbitration.  In response, Langlois challenges the validity of the Arbitration Agreement by asserting that Louisiana's policy prohibiting the enforcement of a forum selection clause in a pre-dispute

---

[12] Rec. Doc. 4-4, p. 4, ¶7.
[13] Rec. Doc. 4-6, p. 2.
[14] Rec. Doc. 4-6, p. 2.
[15] Rec. Doc. 4-6, p. 7, ¶7.
[16] Rec. Doc. 4-5, p. 3, ¶4 (Bharath Kumar Arja, Senior SharePoint Administrator for Amedisys, attested to the fact that Langlois acknowledged the Dispute Resolution Agreement on August 6, 2013 at 2:50p.m.). Rec. Doc. 4-5, p. 4 (SharePoint system document depicting Langlois' acknowledgement).
[17] Rec. Doc. 4-4, p. 5, ¶¶8-9 (Langlois' personnel file at Amedisys contains no opt-out form.).

33305                                    3

arbitration agreement conflicts with the FAA. Therefore, Langlois contends that Amedisys' Arbitration Agreement is unenforceable.

## II. LAW AND ANALYSIS

### A. Federal Arbitration Act

The Fifth Circuit has recognized that "[a]rbitration is favored in the law."[18] Moreover, there is a "liberal Federal Policy favoring arbitration agreements."[19] When presented with a motion to compel arbitration under the FAA, a court must initially determine whether the FAA is applicable.[20] Section 2 of the FAA provides that a written agreement to arbitrate related to a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[21] In this case, the Parties do not dispute that the contract is governed by the FAA. Therefore, the Court finds that the FAA is applicable to the Arbitration Agreement.

When contracts, such as the one at issue, are governed by the FAA, courts generally engage in a two-step inquiry.[22] "First, the court must determine whether the parties agreed to arbitrate the dispute."[23] "This involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."[24] "Courts apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls

---

[18] *Gregson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000)(citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).
[19] *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 91 (2000)(citing *Moses*, 460 U.S. at 24).
[20] *Thomas v. Louis Dreyfus Commodities*, LLC, 2016 WL 3197562, *2 (M.D.La. June 8, 2016).
[21] 9 U.S.C. § 2.
[22] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996).
[23] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)(internal citations omitted).
[24] *Webb*, 89 F.3d at 258 (citations omitted).

33305                                   4

within an arbitration agreement's scope but not when determining whether a valid arbitration agreement exists."[25]  In resolving the question of whether an arbitration agreement is "contractually valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'"[26]  If the court finds that the parties agreed to arbitrate, then the court must consider "whether any federal statute or policy renders the claims non-arbitrable."[27]

In her *Opposition*, Langlois' only challenge is to the Arbitration Agreement's validity under Louisiana law.  As such, the Court's analysis shall focus solely on this issue.

### B. Validity of Arbitration Agreement Pursuant to Louisiana Law

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[28]  A valid contract requires "the capacity to contract (La. C.C. art. 1918); (2) mutual consent (La. C.C. art. 1927); (3) a certain object (La. C.C. art. 1971); and (4) a lawful cause (La. C.C. art. 1966)."[29]  In her *Opposition*, Langlois contends that, because the Arbitration Agreement constitutes a choice of forum clause, the Court "must consider the impact of [La. R.S.] 23:921(A)(2)" in determining the validity of the Agreement.[30]  La. R.S. 23:921(A)(2) provides as follows:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or law clause is expressly, knowingly, and

---

[25] *LeBlanc v. Texas Brine Co., LLC*, 2016 WL 2849506, *3 (E.D.La. May 10, 2016)(citing *Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008)).
[26] *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225 (5th Cir. 2014)(quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)).
[27] *Banc One Acceptance Corp.*, 367 F.3d at 429 (internal citations omitted).
[28] La. Civ. Code. art. 1906.
[29] *Gipson v. Fortune*, 45,021(La.App. 2 Cir. 1/27/10), 30 So.3d 1076, 1079.
[30] Rec. Doc. 8, p. 3.

> voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

Because she entered into the employment Arbitration Agreement before the dispute giving rise to this litigation occurred, and she has not subsequently agreed to the terms of the Arbitration Agreement, Langlois argues that pursuant to La. R.S. 23:921(A)(2), the Arbitration Agreement is null and void.  Langlois further contends that La. R.S. 23:921(A)(2) is not preempted by the FAA because it is based on strong public policy governing only when an arbitration agreement may be entered into and, therefore, does not conflict with the use of or purpose of the FAA.

Because the "FAA preempts state laws that restrict the enforcement of arbitration agreements … thereby conflict[ing] with the FAA's dispute resolution regime,"[31] the Court must first determine whether such a conflict exists here.  The express language of the FAA makes arbitration agreements entered into pre-dispute enforceable, since it makes "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction …valid, irrevocable, and enforceable."[32]  In contrast, La. R.S. 23:921(A)(2) only authorizes employers and employees to enter into post-dispute arbitration agreements.

As for Langlois' public policy argument, the Court acknowledges that 9 U.S.C. § 2 gives States a method of "regulat[ing] contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.'"[33]  But the Supreme

---

[31] *Sherman v. RK Restaurants Holdings, Inc.*, 2014 WL 4540023, *7 (E.D.La. Sept. 11, 2014).
[32] 9 U.S.C. § 2.
[33] *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995)(quoting 9 U.S.C. § 2)(emphasis added)).

33305                                    6

Court has instructed that, "[w]hat States may not do is decide that a contract is fair enough to enforce all its basic terms … but not fair enough to enforce its arbitration clause.  The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration on an unequal 'footing,' directly contrary to the [FAA's] language and Congress' intent."[34]

In *Sherman v. RK Restaurants Holdings, Inc.*, the Eastern District of Louisiana considered whether the FAA preempted La. R.S. 23:921.[35]  In conducting its analysis, the *Sherman* court relied heavily on the Fifth Circuit's decision in *OPE Intern. LP v. Chet Morrison Contractors, Inc.*, in which the Fifth Circuit held that the FAA preempted La. R.S. 9:2779--another Louisiana statute that prohibited forum selection clauses outside of Louisiana in construction contracts.[36]  In finding that the district court properly compelled the parties to arbitrate, the *Chet Morrison* court explained:

> La. R.S. 9:2779 declares "null and void an unenforceable against public policy any provision in [certain construction subcontracts] … which [] [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of [Louisiana]. La. Rev. Stat. Ann. 9:2779(B)(1). The statute directly conflicts with §2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally.  See *Doctor's Assocs.*, 517 U.S. at 687, 116 S.Ct. 1652.  The FAA therefore preempts the Louisiana statute, which prohibits the arbitration agreement between CMC and OPE.[37]

Noting the similar forum selection language in La. R.S. 23:921 and La. R.S. 9:2779, the *Sherman* court explained how La. R.S. 23:921 placed conditions on the enforceability of the arbitration agreement at issue, thereby precluding the enforcement of the agreement's forum selection clause.  Because the FAA imposed no similar restrictions on the

---

[34] *Id.* (citing *Volt Info. Sci., Inc. v. Board of Tr. Of Leland Stanford U.*, 489 U.S. at 468, 474, 109 S.Ct. 1248, 1253, 103 L. Ed. 2d 488 (1989)).).
[35] *Sherman*, 2014 WL 4540023.
[36] *OPE Intern. LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443 (5th Cir. 2001).
[37] *Id.* at 447.

arbitration agreement, the *Sherman* court concluded that La. R.S. 23:921 directly conflicted with the FAA.  Hence, the *Sherman* court held that the FAA preempted La. R.S. 23:921.

As in *Sherman*, the Court finds that the FAA imposes no similar forum selection clauses as required by La. R.S. 23:921; therefore, La. R.S. 23:921 directly conflicts with the FAA.  Moreover, the public policy behind La. R.S. 23:921 places arbitration agreements in the employment context on "unequal footing" with other contracts, which likewise runs afoul to 9 U.S.C. § 2.  Accordingly, the Court finds that the FAA preempts La. R.S. 23:921 and the Court shall grant Amedisys' *Motion to Compel Arbitration*.[38]

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that Amedisys Holding, LLC's *Motion to Compel Arbitration and Dismiss, Alternatively to Stay Action Pending Arbitration*[39] is hereby GRANTED, and Plaintiff Maellen Langlois' claims shall be dismissed without prejudice.

Signed in Baton Rouge, Louisiana on July 27, 2016.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[38] Langlois does not dispute the fact that her claims fall within the scope of the Arbitration Agreement, nor does Langlois assert that any recognized federal statute or policy renders her claims nonarbitrable.
[39] Rec. Doc. 4.